IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTWON L. WILLIAMS,<br><br>     Plaintiff,<br><br>  vs.<br><br>SCOTT FRAKES, Director of the Nebraska Department of Correctional Services (NDCS); JEFF KASSELMAN, Medical Director of the Nebraska Department of Correctional Services (NDCS); DR. ROBERT CUNARD, Medical Doctor at the Diagnostic & Evaluation Center (NDCS); CHRISTINE SCRVIDO, Register Nurse at the Diagnostic & Evaluation Center (NDCS); ANTINUKE BAMIES, Contract Register Nurse at the Diagnostic & Evaluation Center (NDCS); MIKE ABEJO, Contract Register Nurse at the Diagnostic & Evaluation Center (NDCS); EDITH ENIKE, Contract Register Nurse at the Diagnostic & Evaluation Center (NDCS); CHERYL FLINN, Physician Assistant, Contract at the Diagnostic & Evaluation Center (NDCS); and ERIN DOUGHERTY, Physician Assistant, Contract at the Diagnostic & Evaluation Center (NDCS);<br><br>     Defendants. | **4:23CV3214**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff's two motions to withdraw his previous motion to dismiss. Filing No. 12; Filing No. 18. Plaintiff's first motion to withdraw, Filing No. 12, is unsigned, and Plaintiff filed the second motion to withdraw, Filing No. 18, to correct the signature deficiency. The Court will, therefore, deny Plaintiff's first motion as moot and consider the second motion (hereinafter the "Motion to Withdraw") as the operative motion. For the reasons that follow, Plaintiff's Motion to Withdraw will be

granted as Plaintiff's Complaint alleges a plausible claim for relief against several named defendants and Plaintiff's mistaken reasoning for filing his motion for voluntary dismissal justifies relief from the judgment.

## I.  BACKGROUND

Plaintiff is an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS") and, according to NDCS' online inmate records, is currently confined in the Reception and Treatment Center ("RTC") in Lincoln, Nebraska.  *See* https://dcs-inmatesearch.ne.gov/Corrections/COR_input.jsp (last visited Sept. 30, 2025).  Plaintiff filed his Complaint in this case on November 9, 2023, when he was confined in the Nebraska State Penitentiary.  Filing No. 1 at 2.  The Court granted Plaintiff leave to proceed in forma pauperis and directed him to pay an initial partial filing fee by December 18, 2023.  Filing No. 6.  Plaintiff paid his initial partial filing fee on December 14, 2023, and was advised that the next step in his case would be for the Court to conduct an initial review of his claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and that the Court would conduct this review in its normal course of business.  *See* Filing No. 6 at 3.

Before the Court conducted its initial review, Plaintiff filed what the Court construed as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41 on October 28, 2024.  Filing No. 8.  On November 13, 2024, the Court entered a Memorandum and Order and Judgment granting Plaintiff's motion and dismissing this matter without prejudice.  Filing No. 9; Filing No. 10.

On December 18, 2024, Plaintiff submitted his first unsigned "Motion to Withdraw the Motion to Dismiss" along with a letter indicating that he now wished to withdraw his

previous motion to dismiss his case because he was currently employed and could pay his court fees. Filing No. 12. After being informed of the motion's signature deficiency by the Clerk and later by the Court, *see* Filing No. 13 (text notice); Filing No. 15, Plaintiff filed the present Motion to Withdraw on February 10, 2025, Filing No. 18.

## II. DISCUSSION

The Court liberally construes Plaintiff's Motion to Withdraw as a motion for relief from the Court's judgment brought pursuant to Federal Rule of Civil Procedure 60(b). Under Rule 60(b), a court may grant a party relief from a judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under the catchall provision, Rule 60(b)(6), is available only in "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777–78 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524 (2005)).

Here, Plaintiff appears to seek relief from the Court's judgment granting his motion for voluntary dismissal and dismissing this matter without prejudice because his decision to dismiss the case was based on financial concerns that are no longer

applicable.  To address Plaintiff's motion, the Court will first conduct an initial review of Plaintiff's Complaint to determine whether Plaintiff has stated a claim upon which relief may be granted.  For if Plaintiff has not alleged a plausible claim for relief, then relief from the Court's judgment granting his motion for voluntary dismissal would be unwarranted.

## A.  Summary of Complaint

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 against former NDCS Director Scott Frakes, former NDCS Medical Director Jeff Kasselman, and the following medical personnel employed at the Diagnostic and Evaluation Center ("DEC")[1]—Dr. Robert Cunard ("Dr. Cunard"); Registered Nurses Christine Scrvido, Antinuke Bamies, Mike Abejo, and Edith Enike; and Physician Assistants Cheryl Flinn ("PA Flinn") and Erin Dougherty ("PA Dougherty").[2]  Plaintiff seeks declaratory and injunctive relief and damages against Defendants for alleged deliberate indifference to his serious medical needs in violation of the Eighth Amendment related to Defendants' administration of anti-seizure medication to Plaintiff in excessive and, allegedly, toxic amounts.  Plaintiff alleges the following facts in support of his claims.

Plaintiff arrived at the DEC on June 16, 2021, and received a medical and psychological evaluation by Scrvido in which she asked Plaintiff questions concerning his psychological, physical, and mental health "before allowing plaintiff to be release[d] out into the inmate population."  Filing No. 1 at 4.  In response to Scrvido's questions, Plaintiff indicated he was not suicidal, did not have suicidal tendencies, nor did he feel

---

[1] The Diagnostic and Evaluation Center is now known as the Reception and Treatment Center.

[2] Unless otherwise noted, the individual defendants will be referred to by their last names and collectively as "Defendants."

like hurting himself or others.  When asked if Plaintiff had any medical issues or took medications that medical staff needed to be aware of, Plaintiff informed Scrvido that he "was epileptic and has grand mal seizure," that he had not had his anti-seizure medication in two days, and that he takes Carbamazepine 400mg twice daily for his seizures.  *Id*. at 5.  Scrvido informed Plaintiff that medical staff had his medication prescription, and, a short time later, she brought Plaintiff "a yellow football shape pill," which did not look like Plaintiff's prescribed Carbamazepine.  *Id*.  Plaintiff stated his observation to Scrvido and suggested she was administering the wrong medication to him, but Scrvido replied "that she was administering his appropriate prescribed medication [and] that the yellow football shape pill was Carbamazepine only different shape color not what plaintiff use [sic] to seeing." *Id*.  Based on Scrvido's assurances that the medication was Carbamazepine anti-seizure medication, Plaintiff took the medication.

On June 17, 2021, Abejo was distributing medication from a "med-cart" to the inmate general population and brought Plaintiff "the same yellow football shape pill that Ms. Scrvido had administered to plaintiff the day before." *Id*. at 6.  Plaintiff asked Abejo if this medication was his prescribed Carbamazepine anti-seizure medication to which Abejo responded that his job was to distribute inmates' prescribed medication, that the "medication was either prescribed by medical physicians or . . . by a doctor[, and] that he doesn't prescribe[ ] medication except for he'd ensure to plaintiff that the yellow football shape pill was a Carbamazepine." *Id*.  Plaintiff took the medication administered to him by Abejo.

5

Later on June 17, 2021, Enike came to administer Plaintiff his anti-seizure medication. Enike provided Plaintiff with both the yellow football shaped pill and what he recognized as "a Carbamazepine 400mg," and Plaintiff asked why he had to take doses of both pills that were supposed to be the same medication. *Id*. at 7. Enike informed Plaintiff that she had to administer his medication to him according to how it is prescribed by his doctor and she received orders from her superiors to administer both anti-seizure pills to Plaintiff. Plaintiff took both anti-seizure medications administered to him by Enike. Similarly, on June 18, 2021, Bamies administered both the yellow football shaped pill and a Carbamazepine 400mg pill to Plaintiff. When Plaintiff asked why he had to take both anti-seizure medications when he is prescribed only Carbamazepine 400mg twice daily, Bamies informed Plaintiff that he has "to take his medication according to how they are being administered to him" and "[t]hat his medical records show[ ] that plaintiff is prescribed to be administered both anti-seizure medication twice daily." *Id*. Plaintiff took both pills administered by Bamies.

Plaintiff believes that at some time on June 19, 2021, he must have lost consciousness or blacked out because he found himself on a medical ward gallery in the Lincoln Correctional Center ("LCC") wearing "suicidal attire" and suffering from a severe migraine headache, stiff neck, sore throat, and lower back and side pain. *Id*. at 8. Plaintiff pounded on the door for medical staff attention and spoke to a nurse to find out how he came to be on the medical gallery. The nurse informed Plaintiff that he recently had a violent episode in which he used abusive language and threatened to attack or kill staff and inmates and that he tried to hang himself and had to be restrained by several correctional officers. Plaintiff had no recollection of these events. Plaintiff

told the nurse that he needed some relief for his migraine headache, stiff neck, sore throat, and lower back and side pain, but the nurse informed him "that medical staff had received orders from their superiors not to administer medication to plaintiff . . . until he is seen or examined by the doctor." *Id*. at 9.

While confined on the medical gallery on suicide watch, Plaintiff spoke with two correctional officers who confirmed the nurse's account of events and "stated to plaintiff that he wasn't himself the other day[,] [t]hat he caught everyone by surprise or off guard[, and] plaintiff is known to staff . . . to be polite and very mild mannered." *Id*. (spelling corrected).   Plaintiff informed the correctional officers that he believed the interaction of the Carbamazepine anti-seizure medication with the yellow football shaped pill administered to him by prison medical staff caused his violent episode.

Records Plaintiff attached to his Complaint show that on June 17, 2021, at 8:50 a.m., Plaintiff told DEC Corporal Sabokrooh, when he opened Plaintiff's door, that Plaintiff's father died a couple weeks prior "and that he has to speak to someone or he will hurt an inmate or a staff member." *Id*. at 33.  Sabokrooh told Plaintiff he would try to get someone to come talk to Plaintiff and closed Plaintiff's door.  Approximately fifteen minutes later, Plaintiff started banging on his door very loudly, and Sabokrooh told Plaintiff that "mental health was going to come talk to him, but [Plaintiff] refused and told [Sabokrooh] not to open the door or he will hurt [Sabokrooh] and any inmate he sees once that door opens." *Id*.   When Sabokrooh asked Plaintiff why he was being aggressive towards him when Sabokrooh was trying to help Plaintiff, "he replied back with he didn't know and that he would hurt any staff he sees if he doesn't get taken upstairs." *Id*.

7

Subsequently, on June 18, 2021, at 8:00 p.m., Plaintiff was yelling and banging on the door of his room, and he verbalized an intention to harm himself. The on-call mental health and "MOD" were notified, and Plaintiff was ordered transferred to LCC "for Plan A" at about 9:25 p.m. and was noted to be "awake, alert and oriented, no medical concerns." *Id*. at 25. Plaintiff was brought back to DEC around 5:00 a.m. on June 19, 2021, and placed in the skilled nursing facility ("SNF") as a "security hold." *Id*. Plaintiff's medical chart entry notes that he "responds to nursing greetings and denies medical needs" but "complains of backache" to which staff informed him "to do kite for chronic backache problem." *Id*. Plaintiff remained in the SNF until June 21, 2021, when he was discharged after being seen by Dr. Cunard, who noted Plaintiff complained of "getting 2 seizure meds. Keppra was given [un]til Tegretol available," and the Keppra would be discontinued "now that Tegretol is on board," but the Tegretol EP dosage would be decreased to 400mg once daily. *Id*. at 26. Tegretol is another name for Carbamazepine. *See Id*. at 27, 65.

On June 21, 2021, medical staff began to administer Plaintiff his prescribed medication, Carbamazepine 400mg, "without the yellow football shape pill." *Id*. at 9. Plaintiff learned that the yellow football shaped pill was Keppra 500mg, another form of anti-seizure medication, and Dr. Cunard had ordered medical staff, on June 16, 2021, to administer both Carbamazepine and Keppra to Plaintiff. *Id*. at 13, 24. On June 20, June 21, and June 27, 2021, Plaintiff submitted inmate interview request forms to the DEC medical staff and to the prison warden "inquiring about the cocktail mixture of anti-seizure drugs that prison medical staff had been administering to him for several days which plaintiff believes resulted [in] his violent episode" as he was administered "an

interaction of unprescribed drugs Carbamazepine 400mg and Keppra 500mg twice daily doses for several days which is twice [the] amount of plaintiff['s] lethal [sic] prescribed doses." *Id*. at 10 (spelling corrected).  Plaintiff's medical records show Plaintiff received both Keppra 500mg and Carbamazepine 400mg together six times beginning on the evening of June 17, 2021, through the evening of June 20, 2021. *Id*. at 30–31.

In response to Plaintiff's inmate interview requests regarding receiving both anti-seizure medications when he is only supposed to receive Carbamazepine 400 mg twice daily, medical staff indicated to Plaintiff that his dose is "right now," *Id*. at 46, and he was "back on Carbamazepine 400mg once a day," *Id*. at 47.  In response to Plaintiff's June 24, 2021, inmate interview request stating he was supposed to be on Carbamazepine 400mg twice daily, PA Dougherty responded, "We can increase to twice per day," and Plaintiff's medical chart indicates PA Dougherty consulted with Dr. Cunard and Plaintiff's prescription was amended to Carbamazepine 400mg twice daily on June 25, 2021. *Id*. at 27, 48.  Similarly, on June 28, 2021, PA Flinn specifically responded to Plaintiff's inmate interview requests regarding his past receipt of two anti-seizure medications that Plaintiff's "[s]cript is for 400mg twice daily → Should be straightened out by now," *Id*. at 53. *See also Id*. at 49–52.  On July 7, 2021, Plaintiff sent an inmate request to Frakes requesting that Frakes "investigate matters that he wasn't suicidal[,] that his incident resulted from prison medical staff administering an interaction of unprescribed anti-seizure drugs to him[, and] that he need[ed] to be examined by a neurologist or either a pathologist." *Id*. at 10–11.  Frakes did not respond to Plaintiff's inmate request form.

Plaintiff attached to his Complaint copies of his grievances filed pursuant to NDCS' grievance procedure.  In his Informal Grievance dated July 7, 2021, Plaintiff

complained that medical staff adjusted his medication and overdosed him, causing his mental episode and pain in his lower right side. Prison staff responded:

> Medical staff report that you arrived at DEC without any medications and a substitute medication was used until your usual med was delivered. Medical reports there was a couple days of overlap of both medications, but no adverse reactions were noted and there was no effect on your psychotic reaction. Staff further state that you were placed on suicide watch due to the difficulty of dealing with emotions related to your current situation. Lastly medical reports that if you are having severe pain in your side you need to submit an IIR to be seen on sick call.

*Id*. at 35–37. Plaintiff filed a Step One Grievance stating that medical staff clearly admitted they administered an overdose of medication to Plaintiff, which is a "clear sign" of malpractice, and he complained that he still had not been seen for the pain in his side and head. *Id*. at 38–39. In response, NDCS staff member Cathy Sheer stated, "I concur with the response to the informal grievance, #5209. In addition, medical reports you are scheduled for sick call. Please be patient for sick call." *Id*. at 38.

Plaintiff submitted a Step 2 Grievance on July 30, 2021, stating that as a result of his overmedication and the medical staff's carelessness, he was having problems with his right lower back side, "liver or kidney," problems with "urinating, and really bad headache, also a mental outbreak" in which he attempted suicide by hanging himself. *Id*. at 41–42 (spelling corrected). The NDCS Director's Designee, Harbans Deol, responded:

> I support the response to the Step One grievance. Further, DEC Medical states that you arrived with no medications, so a substitute medication was used until your usual medication was received. Although there may have been a couple days of overlap no bad reactions were noted. Documentation of your suicidal ideation incident indicates you reported to staff you were feeling suicidal regarding family matters and your current incarcerated status. Not medication concerns.

*Id*. at 43.

10

On July 15, 2021, one month after Plaintiff's violent episode, PA Flinn authorized medical staff to draw Plaintiff's blood for lab testing "due to the nature of his violent episode," and Plaintiff believes PA Flinn waited a month to order this testing to "cover up" the prison medical staff's administration of "the interaction of Carbamazepine and Keppra anti-seizure drugs" so that a toxicologist or pathologist would not discover traces of the interaction in Plaintiff's blood. *Id*. at 11 (spelling corrected). Plaintiff alleges PA Flinn and PA Dougherty were both aware of the interaction of Carbamazepine and Keppra administered to Plaintiff and the danger to Plaintiff caused by the interaction of the drugs "which had become toxic to Plaintiff's internal organs," but both Defendants failed to obtain emergency treatment or hospitalization immediately after Plaintiff's violent episode, resulting in Plaintiff suffering "from further significant injuries." *Id*. at 11–12. Plaintiff alleges Kasselman, at some point in time, became aware or was informed of Plaintiff's violent episode and the interaction of Carbamazepine and Keppra administered to Plaintiff. Knowing that "the risk and danger of drug toxicity interaction negative reactions" associated with the administration of Carbamazepine and Keppra could result in "other serious medically [sic] health issues, such as, liver, kidney and digestive system," which Plaintiff suffers from, Plaintiff alleges Kasselman should have sent Plaintiff to an outside facility for medical emergency treatment and had him examined by a neurologist but failed to do so. *Id*. at 14–15.

Plaintiff alleges the interaction of Carbamazepine and Keppra Defendants administered to him in 2021 caused his violent episode and "became toxic to Plaintiff's system internally [and] resulted to Plaintiff to have mis-function complications of the liver, kidney[,] stomach and gastrointestinal track," as evidenced by his diagnosis of

11

chronic constipation in September 2023. *Id*. at 16–17. Plaintiff also alleges that, as he has been seeking his medical records from the prison medical department, his medical records tend to be either altered, lost, or misplaced in "violation of Plaintiff's Eighth Amendment rights." *Id*. at 21; *see also Id*. at 18.

Plaintiff seeks a declaration that Defendants' conduct violated his Constitutional rights, an injunction "ordering prison medical transparency about his serious medical needs and adequate medical treatment for his chronic conditions," and $2,000,000 in compensatory damages and $2,000,000 in punitive damages against each Defendant. *Id*. at 22.

## B.  Applicable Legal Standards on Initial Review

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## C. Analysis of Claims

### 1. Official Capacity Claims

Plaintiff sued Defendants in their official and individual capacities for declaratory, injunctive, and monetary relief. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*,

13

*Dover Elevator Co.*, 64 F.3d at 446; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception does not apply to cases involving requests for purely retroactive relief. *Green v. Mansour*, 474 U.S. 64 (1985).

Plaintiff's claims for monetary relief and for a declaration of past constitutional violations against the Defendants in their official capacities are barred by Eleventh Amendment sovereign immunity as nothing in the record before the Court shows that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (section 1983 provides no cause of action against agents of the state acting in their official capacities; sovereign immunity bars claim against state-agency employees for monetary damages under federal act); *Jacobson v. Bruning*, No. 4:06-CV-3166, 2007 WL 1362638, at *2 (D. Neb. Apr. 24, 2007) ("a declaratory judgment establishing *past* liability of the State is . . . forbidden by the Eleventh Amendment" (italics in original) (citing *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 646 (2002))); *Hansen v. Vampola*, No. 4:07CV3074, 2007 WL 1362689, at *2 (D. Neb. Apr. 16, 2007) ("A declaratory judgment establishing only the **past liability** of the state is forbidden by the state's sovereign immunity preserved by the Eleventh Amendment to the Constitution." (bold in original)). Thus, Plaintiff's claims for money damages and declaratory relief against Defendants in their official capacities cannot proceed.

Plaintiff's claims for prospective injunctive relief against the Defendants in their official capacities are not barred by sovereign immunity nor are his claims against

Defendants in their individual capacities. Accordingly, the Court next examines whether Plaintiff has stated plausible claims for relief under the Eighth Amendment.

### 2. Eighth Amendment Claim

Liberally construed, Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. To establish an Eighth Amendment violation, a prisoner must demonstrate an objectively serious medical need that the defendant knew about and deliberately disregarded. *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (citing *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018)). Ascertaining "[w]hether an official was deliberately indifferent requires both an objective and a subjective analysis." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more than gross negligence, and mere disagreement with treatment decisions does not reach the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted). A prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

"[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006). "When an official denies a person treatment that has been ordered or medication that

15

has been prescribed, constitutional liability may follow." *Dadd v. Anoka Cty.*, 827 F.3d 749, 756–57 (8th Cir. 2016) (right to adequate medical treatment was clearly established when pretrial detainee arrived at jail after dental surgery with Vicodin prescription for severe pain and deputies and jail nurse acted with deliberate indifference by ignoring detainee's complaints of pain and requests for treatment). *See also Foulks v. Cole Cty., Mo.*, 991 F.2d 454, 455-57 (8th Cir. 1993) (holding there was liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain, and refused requests for medical care); *Majors v. Baldwin*, 456 Fed. App'x 616, 617, 2012 WL 739347 (8th Cir. 2012) (unpublished) (holding that plaintiff had stated a deliberate indifference claim where defendants withheld prescribed pain medication and did not provide adequate post-operative treatment); *Motton v. Lancaster Cty. Corr.*, No. 4:07CV3090, 2008 WL 2859061, at *6 (D. Neb. July 21, 2008) (noting that the knowing failure to administer prescribed medicine can constitute deliberate indifference, but to establish constitutional violation, inmate must produce evidence that delay in providing medical treatment had detrimental effect on inmate).

With these standards in mind, the Court examines Plaintiff's claims against each of the named Defendants.

### a. Dr. Cunard

Plaintiff alleges Dr. Cunard was deliberately indifferent to his serious medical needs when he "increase[d] the doses of Plaintiff's anti-seizure medication without just cause." Filing No. 1 at 13. Liberally construed, Plaintiff alleges Dr. Cunard prescribed both Keppra and Carbamazepine for Plaintiff when he arrived at the DEC, which

16

resulted in Plaintiff receiving more than twice his normal dosage of anti-seizure medication over four days and caused Plaintiff to suffer "a medically violent side effect suicidal behavior, headache, stomach, back, and side pains." *Id*. Taking these allegations as true, Plaintiff's Complaint states a plausible claim for relief against Dr. Cunard.

### b. Scrvido, Abejo, Enike, and Bamies

Liberally construed, Plaintiff alleges Scrvido, Abejo, Enike, and Bamies were deliberately indifferent to his medical needs when they administered Keppra to Plaintiff instead of his prescribed medication, Carbamazepine, and administered doses of both medications to Plaintiff at the same time. Filing No. 1 at 18–19. However, Plaintiff's factual allegations demonstrate that these Defendants merely administered medication to Plaintiff on one or two occasions in accordance with Dr. Cunard's prescription orders, which does not suggest deliberate indifference to his medical needs. *See Hamilton v. Cox*, No. 3:21-CV-179, 2021 WL 6118731, at *1–2 (E.D. Ark. Nov. 29, 2021), *report and recommendation adopted*, No. 3:21-CV-179, 2021 WL 6118670 (E.D. Ark. Dec. 27, 2021) (allegation that nurse twice gave inmate the wrong medication "constitutes negligence, or at most gross negligence, which is insufficient to state a viable deliberate indifference claim"). Moreover, Plaintiff does not allege any facts to suggest Nurses Scrvido, Abejo, Enike, and Bamies had authority to deviate from Dr. Cunard's orders, and, thus, his allegations fail to establish an Eighth Amendment violation. *See Bender*, 385 F.3d at 1138 (recognizing that a provider cannot be found to have acted with deliberate indifference by not providing treatment he or she did not have the authority to provide). Plaintiff's claims against Scrvido, Abejo, Enike, and Bamies cannot proceed.

17

### c.  P.A. Flinn and P.A. Dougherty

Plaintiff alleges PA Flinn and PA Dougherty were deliberately indifferent to his medical needs because they both knew that Plaintiff was administered Carbamazepine and Keppra together over a number of days but failed to obtain any treatment for Plaintiff immediately after the overmedication occurred.  Filing No. 1 at 11–12, 20.  PA Flinn delayed lab tests of Plaintiff's blood until one month after the drug interaction occurred, preventing timely treatment of the toxicity when it occurred, and PA Dougherty failed to seek a "medical emergency hospitalization where Plaintiff would've been able to have the toxic substances flush[ed] from his internal organs" despite her knowledge of the danger Plaintiff faced from the drug interaction.  Id. at 12.  Plaintiff alleges PA Flinn's and PA Dougherty's failure to provide timely treatment caused him further injuries.

"A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis."  Redmond v. Kosinski, 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011) (cleaned up)).  Here, Plaintiff alleges, and his medical records show, he began complaining of side pain and kidney pain soon after his overmedication occurred and his complaints of gastrointestinal issues continued into 2023.  Filing No. 1 at 8, 16, 27.  Construed liberally, Plaintiff has alleged sufficient facts to state an Eighth Amendment deliberate indifference claim against PA Flinn and PA Dougherty.

### d.  Kasselman and Frakes

Plaintiff also claims NDCS Medical Director Kasselman and NDCS Director Frakes were deliberately indifferent to his medical needs.  "It is well settled that § 1983 does not impose respondeat superior liability."  *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted).  To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury.  *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).  "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'"  *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)).

Here, Plaintiff alleges Kasselman and Frakes knew about Plaintiff's violent episode and suicide attempt, as well as the interaction of anti-seizure medications that had been administered to Plaintiff by prison medical staff, but did nothing to ensure he received proper care.  Filing No. 1 at 14–16.  Plaintiff specifically alleges Kasselman knew the dangers presented by the administration of both Carbamazepine and Keppra to Plaintiff but failed to have Plaintiff sent to an outside facility for medical emergency treatment.  Plaintiff also alleges Frakes was "legally responsible for the overall operation of the department . . . including the prison medical staff department [and] contract medical staff."  *Id*. at 15.  Liberally construed, Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against administrative/supervisory defendants Frakes and Kasselman.

While Plaintiff's claim may proceed against Frakes and Kasselman in their individual capacities, neither Frakes nor Kasselman currently occupy their supervisory positions at NDCS. Accordingly, to the extent Plaintiff seeks relief against these Defendants in their official capacities, the Court will automatically substitute current NDCS Director Rob Jeffreys and NDCS Medical Director Jerry Lee Lovelace Jr. as parties in their official capacities only pursuant to Fed. R. Civ. P. 25(d). *See* https://corrections.nebraska.gov/about/agency-leadership (last visited September 30, 2025).

### 3. Lost, Misplaced, and Falsified Medical Records

Plaintiff alleges that in seeking his medical records from the NDCS medical department, he has noticed "documents are either missing from his medical file or . . . being fabricated such as times[,] dates[,] staff signature scratch out then replace with other staff signature . . . in references to the unprescribed drugs[,] etc." Filing No. 1 at 18. Plaintiff asserts "[t]his is a violation of Plaintiff's Eight Amendment rights to the United States Constitution," and "[t]hese illegal actions can prevent Plaintiff from providing future medical services with his complete medical history." *Id*. at 21.

Assuming Plaintiff's records have been altered as he alleges, Plaintiff's allegations fail to state a claim for relief under 42 U.S.C. § 1983. "Falsification of medical records, in and of itself, generally will not give rise to a § 1983 claim." *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *11 (D. Neb. Sept. 16, 2019). As it stands, the Court cannot infer from Plaintiff's allegations any deliberate indifference to Plaintiff's medical needs related to the falsification or alteration of his medical records that would suggest a plausible section 1983 claim. *See Moore v. Casselberry*, 584

20

F.Supp.2d 580, 582 (W.D.N.Y. 2008) (falsification of inmate plaintiff's medical records not a basis for a constitutional claim absent indication that records were falsified out of deliberate indifference to the inmate plaintiff's serious medical needs or based on any improper motive).  Additionally, Plaintiff does not allege any facts connecting any of the named Defendants to the loss or falsification of his medical records.  Thus, Plaintiff's falsification of medical records claim fails to state a claim upon which relief may be granted.

**D.  Relief from Judgment Warranted**

In light of the Court's determination that Plaintiff's Complaint alleges plausible Eighth Amendment claims against several Defendants, granting Plaintiff relief from the judgment of voluntary dismissal would not be futile.  Upon review of the record in this matter, the Court also concludes that relief from the judgment is warranted on the grounds of mistake.  In his Motion to Dismiss, Plaintiff asked to voluntarily dismiss his case due to his lack of knowledge of "civil matters [and] court rules" and his inability to pay the "monthly court fee."  Filing No. 8 at 1.  Plaintiff's reasons for dismissal, thus, appear to be based on his mistaken belief that he was required to pay his monthly partial filing fee for his case to proceed.  However, Plaintiff had already paid his required initial partial filing fee, and his institution was responsible for collecting any future monthly payments and only when Plaintiff had sufficient funds in his prison account from which payment could be collected.  *See* 28 U.S.C. § 1915(b).

Under these circumstances, the Court finds relief from the judgment of dismissal is warranted under Federal Rule of Civil Procedure 60(b) and will, therefore, grant Plaintiff's Motion to Withdraw.

21

### III.  CONCLUSION

Plaintiff has demonstrated grounds justifying relief from the judgment of dismissal in this case so his Motion to Withdraw is granted and the Court's order and judgment dismissing this case are vacated and set aside.  Upon initial review of the Complaint, the Court concludes Plaintiff has alleged plausible Eighth Amendment claims against Dr. Cunard, PA Flinn, PA Dougherty, Frakes, and Kasselman in their individual and official capacities, though Rob Jeffreys and Jerry Lee Lovelace Jr. will be substituted for Frakes and Kassleman in their official capacities only.  However, the Court cautions Plaintiff that this is only a preliminary determination based on the allegations found within the Complaint.  This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.  Plaintiff's Complaint fails to state a claim against Scrvido, Abejo, Enike, and Bamies, and they will be dismissed from this case without prejudice.  This matter will proceed to service as set forth below.

IT IS THEREFORE ORDERED that:

1.      Plaintiff's Motion to Withdraw, construed as a motion for relief from judgment under Fed. R. Civ. P. 60(b), Filing No. 18, is granted.  Plaintiff's first, unsigned motion to withdraw, Filing No. 12, is denied as moot.

2.      The Court's Memorandum and Order entered on November 13, 2024, Filing No. 9, is withdrawn.

3.      The Court's Judgment entered on November 13, 2024, Filing No. 10, is set aside and vacated.

4.      The matter will proceed to service of process on Plaintiff's Eighth Amendment deliberate indifference claims against Scott Frakes, Jeff Kasselman, Dr.

Robert Cunard, Cheryl Flinn, and Erin Dougherty in their individual and official capacities with Rob Jeffreys and Jerry Lee Lovelace Jr. substituted for Scott Frakes and Jeff Kasselman in their official capacities.

5.    Plaintiff's claims against Christine Scrvido, Antinuke Bamies, Mike Abejo, and Edith Enike are dismissed without prejudice, and the Clerk of the Court is directed to remove these defendants as parties to this action.

6.    The Clerk of Court is directed to update the docket to add "Rob Jeffreys, in his official capacity as Director of the Nebraska Department of Correctional Services," and "Jerry Lee Lovelace Jr., in his official capacity as Medical Director of the Nebraska Department of Correctional Services," as defendants to this action.

7.    The Clerk of Court is further directed to update the docket to reflect that Scott Frakes and Jeff Kasselman are sued in their individual capacities only and that Dr. Robert Cunard, Cheryl Flinn, and Erin Dougherty are sued in their individual and official capacities.

8.    The Clerk of Court is directed to obtain the last known addresses for Defendants Scott Frakes and Jeff Kasselman from the Marshals Service for service of process on them in their individual capacities.

9.    Upon obtaining the necessary addresses, the Clerk of Court is directed to complete summons and USM-285 forms for Defendants Scott Frakes and Jeff Kasselman in their individual capacities at the addresses provided by the Marshals Service.  The Clerk of Court is further directed to deliver the summonses, the USM-285 Forms, the Complaint, Filing No. 1, and a copy of this Memorandum and Order to the Marshals Service for service of process on Defendants Scott Frakes and Jeff

Kasselman in their individual capacities.  Service may be accomplished by certified mail or authorized method of service.  *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01.

10.    The Clerk of Court is directed to file under seal any document containing the last known personal addresses for Defendants Scott Frakes and Jeff Kasselman.

11.    For additional service of process on Defendants Scott Frakes and Jeff Kasselman in their individual capacities, and for service of process on Dr. Robert Cunard, Cheryl Flinn, and Erin Dougherty in their individual and official capacities and Rob Jeffreys and Jerry Lee Lovelace Jr. in their official capacities, the Clerk of the Court is directed to complete summons and USM-285 forms for each Defendant using the following address:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509.

12.    The Clerk of Court is further directed to complete a second set of summons and USM-285 forms for Defendant Dr. Robert Cunard in his individual capacity using the address contained in Case No. 8:23CV361, Filing No. 39, and to file under seal any document containing Dr. Cunard's personal address.

13.    The Clerk of Court is further directed to complete a second set of summons and USM-285 forms for Defendants Cheryl Flinn and Erin Dougherty in their individual capacities using the following address:

> Nebraska Department of Correctional Services
> Reception and Treatment Center
> PO Box 22800
> Lincoln, NE 68542-2800.

14.    The Clerk of the Court shall forward all the summons forms and USM-285 forms together with sufficient copies of the Complaint, Filing No. 1, and this Memorandum and Order to the United States Marshals Service.

15.    The Marshals Service shall serve Defendants Scott Frakes and Jeff Kasselman in their individual capacities; Dr. Robert Cunard, Cheryl Flinn, and Erin Dougherty in their individual and official capacities; and Rob Jeffreys and Jerry Lee Lovelace Jr. in their official capacities at the Office of the Attorney General address above by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

16.    The Marshals Service shall also serve Defendants Dr. Robert Cunard, Cheryl Flinn, and Erin Dougherty in their individual capacities by certified mail or other authorized method of service at the addresses indicated above. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

17.     For service by certified mail or designated delivery service, the Marshals Service shall serve Defendants within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service.  *See* Neb. Rev. Stat. § 25-505.01(1).

18.     The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[3]

19.     Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint.  However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

20.     Plaintiff is hereby notified that failure to obtain service of process on the Defendants within 90 days of the date of this order may result in dismissal of this matter without further notice.  A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

21.     The Clerk of Court is directed to set a case management deadline in this case with the following text: **December 29, 2025**: service of process to be completed.

22.     The Clerk of Court is directed to update Plaintiff's address on the docket sheet and send a copy of this Memorandum and Order to the following address:

> Antwon L. Williams, #219268
> Reception and Treatment Center

---

[3] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service.  *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013).  Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."  *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).  *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

PO Box 22800
Lincoln, NE 68542-2800.

23.    Plaintiff shall keep the Court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal.


Dated this 30th day of September, 2025.


BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

27